IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LINDA L. CURTIS,

        Plaintiff,

v.

CAROLYN W. COLVIN,
**Acting Commissioner of Social Security,**

        Defendant.

Case No. 14-cv-1416-DDC

## MEMORANDUM AND ORDER

Plaintiff Linda L. Curtis seeks judicial review of the final decision by the Commissioner of the Social Security Administration (the "Commissioner") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"). *See* 42 U.S.C. §§ 216(i), 223(d), and 1614(a)(3)(A). Plaintiff has filed a Brief (Doc. 11) requesting review of the Commissioner's decision. The Commissioner filed a Response Brief (Doc. 14) and submitted the administrative record with her Answer (Doc. 9). Having reviewed the record and the parties' briefs, the Court reverses the decision of the Commissioner, orders that judgment be entered under the fourth sentence of 42 U.S.C. § 405(g), and remands the case for further proceedings consistent with this Order.

### I.     Procedural History

Plaintiff applied for DIB and SSI on October 24, 2013, alleging disability beginning September 16, 2012. (R. 185, 193). The Commissioner first denied plaintiff's applications on January 22, 2014 (R. 45-46), and, again, after reconsideration, on April 10, 2014. (R. 109-13). Plaintiff requested a hearing before an administrative law judge ("ALJ") on May 8, 2014. (R. 120-22). And, after a hearing on September 9, 2014, the ALJ denied plaintiff's applications for

1

DIB and SSI, concluding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. (R. 8-19).

On November 13, 2014, the Appeals Council of the Social Security Administration declined to review the ALJ's decision (R. 1-3), rendering it the final decision of the Commissioner. Plaintiff thus has exhausted her administrative remedies. She now seeks judicial review of the Commissioner's final decision denying her benefits.

## II.     Legal Standards

### A. Standard of Review

Section 405(g) of Title 42 of the United States Code grants authority to federal courts to review final decisions by the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). But judicial review of the Commissioner's denial of benefits is limited, extending only to the issues: (a) whether substantial evidence in the record supports the factual findings; and (b) whether the Commissioner applied the correct legal standards. *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007); 42 U.S.C. § 405(g). "If supported by substantial evidence, the [Commissioner's] findings are conclusive and must be affirmed." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). It must be "more than a scintilla," but it need not amount to a preponderance. *Id*. While courts "consider whether the ALJ followed the specific rules of law

that must be followed in weighing particular types of evidence in disability cases," they do not reweigh the evidence or substitute their judgment for the Commissioner's. *Id.* (citation and internal quotation marks omitted). Also, courts do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted). When deciding whether substantial evidence supports the Commissioner's decision, courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision." *Id.* (citation omitted). "'Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (*e.g.*, that offered by treating physicians) or if it really constitutes not evidence but mere conclusion.'" *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987)).

A "failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)). But such a failure justifies reversal only in "appropriate circumstances." *Glass*, 43 F.3d at 1395; *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*). Some errors are harmless, requiring no remand or further consideration. *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-63 (10th Cir. 2012); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### B. Disability Determination

Claimants seeking DIB and SSI benefits carry the burden to show that they are disabled. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted). In general, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner follows "a five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits)). As summarized by our Circuit, this familiar, five-step process is as follows:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basis work activities. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [("RFC")] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(b)-(g). The claimant has the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'" *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d

748, 751 (10th Cir. 1988)). The analysis terminates if the Commissioner determines at any point that the claimant is or is not disabled. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

### III. Discussion

At step two of the five-step evaluation process, the ALJ determined that plaintiff had "the following medically determinable impairments: disorder of the back, depression, history of arm fracture, and schizoaffective disorder." (R.13). But the ALJ also determined at step two that plaintiff was not disabled. The ALJ thus terminated his analysis, finding that plaintiff's medically determinable impairments, alone and in combination, were not "severe," as 20 C.F.R. § 404.1520(c) requires. The ALJ also concluded that plaintiff's schizoaffective disorder did not satisfy the 12-month duration requirement of 20 C.F.R. § 404.1509.

Step two of the sequential evaluation process is a threshold determination intended to eliminate groundless disability claims. To "meet the burden of proof at step two, a claimant must demonstrate an impairment or combination of impairments that significantly limits the claimant's ability to do basic work activity." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (citing 20 C.F.R. § 404.1520(c)). A claimant is able to perform basic work activity if he or she possesses the "abilities and aptitudes necessary to do most jobs," including: walking, standing, lifting, and carrying; "[u]nderstanding, carrying out, and remembering simple instructions;" using judgment; responding to supervision and co-workers appropriately; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).

Our Circuit has held that a claimant need only make a "de minimis" showing to establish that an impairment or combination of impairments is "severe" at step two. *See, e.g., Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) ("stating that step two "requires a 'de minimis'

5

showing of impairment"). Thus, only "'slight' impairments, imposing a 'minimal effect on an individual's ability to work' are considered 'not severe.'" *Lee v. Barnhart*, 117 F. App'x 674, 676 (10th Cir. 2004) (quoting Social Security Ruling 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)). But a "claimant must show more than the mere presence of a condition or ailment." *Hinkle*, 132 F.3d at 1352 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).

Besides establishing the existence of a severe impairment at step two, a claimant also must demonstrate that the impairment "meets the duration requirement in § 404.1509." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *see also Iezzi v. Astrue*, No. 09-10-P-S, 2009 WL 3615018, at *3 n.3 (D. Me. Oct. 27, 2009) ("The questions of whether a medically-determinable impairment meets the durational requirement and whether it imposes no more than a de minimis limitation on a claimant's ability to work are analytically distinct."). To meet § 404.1509's duration requirement, an otherwise severe impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909; *see also McKinney v. Barnhart*, 62 F. App'x 284, 285-86 (10th Cir. 2003) (applying substantial evidence standard to affirm ALJ's decision that, at step two, claimant failed to provide medical evidence showing that her impairment met the duration requirement).

Here, plaintiff asserts that the ALJ erred at step two of his five-step sequential analysis in two ways. First, plaintiff contends that the ALJ ignored record medical evidence indicating that her schizoaffective disorder impaired her ability to perform work-related tasks and would not improve within 12 months. Second, plaintiff argues that the ALJ mischaracterized MRI and x-ray results in the medical record which, she contends, show that her back disorder imposed at least moderate difficulty with work-related tasks. The Court addresses plaintiff's arguments, in turn, below.

### A. Substantial evidence supports the ALJ's conclusion that plaintiff's schizoaffective disorder failed to meet the 12-month duration requirement.

Plaintiff contends that she has satisfied her burden at step two because medical records from the Elizabeth Layton Center show that her schizoaffective disorder caused her "moderate levels of impairment." Doc. 11 at 10. She also contends that record evidence establishes that her schizoaffective disorder satisfied the Act's 12-month duration requirement. Doc. 11 at 10.

#### 1. The Elizabeth Layton Center Medical Records

Plaintiff points specifically to the intake assessment signed by Dr. Shani McCurry (R. 506-14) and several progress notes signed by Dr. McCurry and Nurse Jacqueline Cunningham (R. 497-506) at the Elizabeth Layton Center. Those records show that plaintiff began treatment at Elizabeth Layton on April 22, 2014. (R. 506). On that day, plaintiff informed Dr. McCurry that, for three months, she had heard nonexistent babies crying at night, believed (incorrectly) that she had a grandmother living in England, and suffered anxiety and memory loss. (R. 506). Based on plaintiff's claims, Dr. McCurry diagnosed plaintiff with schizoaffective disorder, finding that she had "experienced delusions and hallucinations as well as manic and depressive episodes" since January 2014. (R. 510). Dr. McCurry also assigned plaintiff a Global Assessment of Function ("GAF") score of 44.[1] (R. 511).

On May 13, 2014, Nurse Cunningham conducted a "psychiatric/medication evaluation." (R. 504-05). At that time, Nurse Cunningham noted that plaintiff's impairment was moderate and her insight and judgment were fair. (R. 504). But Nurse Cunningham also noted that

---

[1] "The GAF is a subjective determination using a scale of 1 to 100 of 'the clinician's judgment of the individual's overall level of functioning.'" *Crane v. Astrue*, 369 F. App'x 915, 920 n.3 (10th Cir. 2010) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000)). GAF scores between 41 and 50 indicate "'serious impairment in social, occupational, or school functioning (*e.g.*, no friends, inability to keep a job).'" *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000)).

plaintiff had problems sleeping, with her appetite, and in activities of daily living. (R. 504). Nurse Cunningham prescribed plaintiff a medication called "Latuda" to treat her schizoaffective disorder. (R. 505).

On May 20, 2014, Dr. McCurry completed a progress note, stating that plaintiff had taken all but one dose of Latuda. (R. 502). Dr. McCurry noted that plaintiff had experienced some side effects, but plaintiff "liked the med because it made her 'relax and not on the edge but also made her hyper[.']" (R. 502). According to this progress note, plaintiff told Dr. McCurry that "[w]ithout the meds, 'I'm just a bitch and hearing the babies . . . .'" (R. 502). Plaintiff also said that she had difficulty sleeping and lacked energy when she did not take her medication. (R. 502). Dr. McCurry's progress note mentioned that plaintiff continued to feel anxious and depressed and that she also had problems with sleep, daily activities, and interpersonal relationships. (R. 502). Dr. McCurry assigned plaintiff a GAF score of 43. (R. 503).

Three weeks later, on June 12, 2014, plaintiff met with Nurse Cunningham. According to Nurse Cunningham's progress note, plaintiff stated that Latuda had "been very helpful" and her "hallucinations [were] almost gone." (R. 500). Nurse Cunningham opined that plaintiff's schizoaffective disorder was a moderate impairment. (R. 500). But her note did not report that plaintiff felt anxious or depressed or that plaintiff had any problems sleeping, eating, or with any other activities of daily living. (R. 500). Nurse Cunningham increased plaintiff's GAF score to 46 and instructed her to continue taking her medication. (R. 500).

Plaintiff met with Nurse Cunningham again for a medicine check on August 14, 2014. (R. 497-99). During that meeting, plaintiff confirmed that Latuda had "been helpful for hallucinations." (R. 497). But plaintiff also indicated that she had experienced more dreams at night, increased anxiety during the day, and "some anger towards her neighbor." (R. 497).

8

Plaintiff agreed to increase her dose of Latuda. (R. 497). Nurse Cunningham characterized plaintiff's schizoaffective disorder as a "moderate impairment," but she increased plaintiff's GAF score to 48. (R. 497).

The final record from the Elizabeth Layton Center is a Medical Source Statement – Mental ("MSS-M") completed by Nurse Cunningham on September 9, 2014. (R. 516-17). In it, Nurse Cunningham opined, as plaintiff's "treating physician," that plaintiff "has or has not been capable . . . of performing sustained work . . . on a regular and continuing basis . . . ." (R. 516). Nurse Cunningham's statement also noted that plaintiff's schizoaffective disorder left her moderately limited or markedly limited in several work-related categories, including "understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation." (R. 516-17).

### 2. Analysis

The ALJ weighed the treatment records from the Elizabeth Layton Center against the entire medical record and concluded that they failed to establish that plaintiff's schizoaffective disorder was a severe impairment. The ALJ also found that plaintiff's disorder had not lasted 12 months, as 20 C.F.R. § 404.1509 requires. Specifically, the ALJ's decision addressed the Elizabeth Layton records and plaintiff's schizoaffective disorder, in relevant part, as follows:

> The claimant does allege some recent problems with hallucinations and hearing voices. In addition, she has presented to Elizabeth Layton for treatment. Information in mental status examinations reveals the claimant is oriented with fair insight and judgment and intact memory (Exhibit 12F). The claimant also notes her condition is improving on medication and she is having fewer hallucinations. The physician at Elizabeth Layton did diagnos[e] schizoaffective disorder. However, the claimant did not mention her hallucinations or voices anywhere else in the medical record or at her consultative examination. Moreover, the claimant is doing well on medication. There is no indication that the claimant will not improve with ongoing therapy and medication management. While claimant may have some mental issues, there has been no established period of 12 months. She has only recently sought and commenced treatment.

9

> There is no indication that, with compliance with appropriate medical treatment, any mental issues will not resolve with medication management.

(R. 17).

Plaintiff asserts that the ALJ's conclusion amounts to reversible error for two reasons. First, she contends that the ALJ failed to cite any evidence suggesting that her schizoaffective disorder would improve within 12 months of its January 2014 onset. Instead, plaintiff argues that Nurse Cunningham's MSS-M demonstrates that plaintiff's disorder had lasted eight months and would continue, thus satisfying the duration requirement. Doc. 11 at 11. Second, plaintiff asserts that the ALJ erred by not discussing the GAF scores assigned in the Elizabeth Layton records which, she contends, indicate that she had a serious impairment.

As for plaintiff's first contention, the Court concludes that substantial evidence supports the ALJ's finding that plaintiff's schizoaffective disorder did not satisfy and was not expected to satisfy the 12-month duration requirement in 20 C.F.R. § 404.1509. Indeed, the ALJ's decision noted, correctly, that the medical records lack evidence that plaintiff had ever complained of hallucinations before seeking treatment at the Elizabeth Layton Center in April 2014. The ALJ explained that the Elizabeth Layton Center's medical records indicate that plaintiff was oriented, had fair insight and judgment, and intact memory. The ALJ also noted that the record shows that plaintiff's schizoaffective disorder was improving with medication and that she was having fewer hallucinations. Based on his analysis of the medical evidence, the ALJ found that plaintiff had failed to show that her schizoaffective disorder had lasted or would last 12 months and, thus, her impairment failed to meet the Act's duration requirement.

Plaintiff contends that the ALJ's finding conflicts with the opinions advanced in Nurse Cunningham's MSS-M. According to plaintiff, Nurse Cunningham's opinion shows that plaintiff "continued to suffer significant limitations eight months after [she] reported a worsening

10

of her conditions." Doc. 11 at 11. Plaintiff thus asserts that the MSS-M proves that her schizoaffective disorder would last 12 months and satisfy the duration requirement.

But the ALJ's decision expressly reconciled the dissonance between his conclusion and Nurse Cunnignham's opinion. The ALJ found that Nurse Cunningham's MSS-M deserved "minimal weight" because the medical record did not support her opinion that plaintiff had suffered or would suffer moderate or marked limitations on a regular or continuing basis. The ALJ explained that he assigned minimal weight to the MSS-M because:

> A nurse is not an acceptable medical source by Agency standards. In addition, the undersigned notes the claimant has not met duration requirements nor is the nurse's opinion supported by other medical evidence of record. Specifically, other treatment records make no mention of mental illness, either observed or reported. Further, the claimant has just recently commenced treatment with Elizabeth Layton Center and no[] durational requirement is met. Therefore, the undersigned affords the opinion minimal weight.

(R. 18). Plaintiff does not challenge the ALJ's rationale for assigning Nurse Cunningham's opinion minimal weight. Instead, she asks the Court to reweigh the MSS-M against the record to reach a conclusion different from the one that the ALJ reached. The Court cannot do so, however. The governing law permits the Court to "'review only the *sufficiency* of the evidence, not its weight.'" *Crane*, 369 F. App'x at 920 (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original)).

The ALJ evaluated the medical record and concluded that plaintiff had failed to provide evidence demonstrating that her schizoaffective disorder had lasted or was expected to last 12 months. Because substantial evidence supports the ALJ's conclusion, the Court finds no error. *See Lax*, 489 F.3d at 1084; *Franz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007) ("In the course of our review, we may neither reweigh the evidence nor substitute our judgment for that of the [Commissioner]." (internal quotation omitted)). The Court thus rejects plaintiff's argument on

this point.

The Court also rejects plaintiff's second contention—*i.e.*, that the ALJ committed reversible error by failing to discuss the GAF scores assigned plaintiff by Dr. McCurry and Nurse Cunningham. The ALJ need not discuss all evidence in the record. *Crane*, 369 F. App'x at 920 (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). "A GAF score of fifty or less, however, does suggest an inability to keep a job." *Lee*, 117 F. App'x at 678 (citing *Oslin v. Barnhart*, 69 F. App'x 942, 947 (10th Cir. 2003)). And, generally, "[i]n a case like this one, decided at step two, the GAF score[s] should not have been ignored." *Id*. But, as explained above, step two of the sequential five-step evaluation process requires the ALJ to determine both whether a claimant's medically determinable impairments are severe *and* whether they meet the duration requirement in § 404.1509. 20 C.F.R. § 404.1520(a)(4)(ii). Because he determined that plaintiff's schizoaffective disorder did not meet the Act's 12-month duration requirement at step two, the ALJ's failure to discuss plaintiff's GAF scores was a harmless error.

**B. The ALJ erred by concluding that plaintiff's back disorder was not a severe impairment.**

Next, plaintiff contends that the ALJ erred at step two by failing to find that plaintiff's back disorder was a severe impairment. Plaintiff asserts that the ALJ mischaracterized objective medical evidence showing that plaintiff suffered moderate degeneration and pronounced arthrosis along her spine and had moderate difficulty with heel and toe walking and hopping. Plaintiff contends that this medical evidence sufficed, carrying her de minimis burden at step two. The Court agrees.

At step two, the ALJ noted that plaintiff had reported a history of non-radiating back pain and experienced "tenderness with palpitation in the lumbar spine." (R. 15-16). The ALJ stated that imaging of plaintiff's lumbar spine showed "some mild-moderate spondylosis at L5-S1" and

12

"some mild degenerative changes and mild stenosis most notable at L4-L5." (R. 15-16). The ALJ also stated that a "MRI of the Cervical spine dated June 4, 2014 revealed mild degenerative changes with no significant stenosis." (R. 16). The ALJ concluded, however, that plaintiff's back disorder did not limit significantly her ability to perform basic, work-related tasks. He explained that plaintiff walked with a normal gait, did not require an assistance device, and had a negative straight-leg raise. (R. 17). The ALJ also found that the medical record did not support plaintiff's testimony that she could walk, sit, or stand only 20 to 30 minutes at a time. (R. 17).

But a review of the medical record reveals that imaging of plaintiff's lumbar spine shows areas of degeneration that are more severe than described by the ALJ. Notably, an x-ray of plaintiff's lumbar spine on January 4, 2014, showed "[r]ather pronounced facetal arthrosis" at L4-L5 as well as "mild to moderate spondylosis at L5-S1." (R. 456). A June 4, 2014 MRI of the same area also revealed "moderate facet hypertrophy" and "mild to moderate foraminal narrowing" at L4-L5. (R. 463).

The Tenth Circuit requires "only a 'de minim[is]' showing by plaintiff, that she has an impairment that would have more than a minimal effect on her ability to do basic work activities." *Piatt v. Barnhart*, 225 F. Supp. 2d 1278, 1284 (D. Kan. 2002) (citing *Hinkle*, 132 F.3d at 1352). Here, plaintiff has made at least a de minimis showing that her back disorder has such an effect. Plaintiff testified that she suffers from lower back pain and has difficulty sitting, standing, and lifting items weighing more than three to five pounds. (R. 32-33). Plaintiff also submitted medical evidence revealing that her lumbar spine had areas of "moderate" and "pronounced" degeneration and was tender when palpitated. (R. 456, 463, 472-73). This evidence sufficed to satisfy plaintiff's de minimis burden. The ALJ thus erred at step two by concluding that plaintiff's back disorder was not a severe impairment. Consequently, the Court

remands the case to the ALJ for further proceedings consistent with this Order. On remand, the ALJ should advance plaintiff's applications to step three of the five-step sequential evaluation process.

## IV.     Plaintiff's Request for Costs and Attorney Fees

In her Brief, plaintiff requests an award of costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. 2412(d). Doc. 11 at 14. Under 28 U.S.C. § 2412(d)(1)(B), plaintiff must move for costs and attorney's fees by motion within 30 days of the Court's entry of final judgment. Plaintiff's request in her Brief does not comport with the requirements set out in § 2412(d)(1)(B). The Court thus denies plaintiff's request without prejudice. Plaintiff may renew her request by submitting a motion that complies with § 2412(d)(1)(B) within 30 days of the entry of this Order.

## V.      Conclusion

The Court reverses and remands the Commissioner's decision. The Court enters its judgment in accordance with the fourth sentence of 42 U.S.C. § 405(g), reversing the Commissioner's decision and remanding the case for further proceedings consistent with this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff Social Security disability insurance benefits and supplemental security income is **REVERSED** and judgment is entered under the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

**Dated this 30th day of March, 2016, at Topeka, Kansas.**

             **s/ Daniel D. Crabtree_____**
             **Daniel D. Crabtree**
             **United States District Judge**